Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Blair Tarr*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Blair Tarr, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Metropolitan Life Insurance Company, Honeywell International, Inc., Honeywell International, Inc., Employee Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Blair Tarr (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1.   Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona

3. Upon information and belief, Defendant Honeywell International, Inc., (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy, which was fully insured and administered by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife"). The specific long term disability policy is knows as group policy number 105241. Upon information and belief, the Company's purpose in subscribing to the MetLife policy was to provide disability insurance for its employees. Upon information and belief, the MetLife policy may have been included in and part of the Honeywell International, Inc. Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to MetLife. Plaintiff believes that as it relates to his claim, MetLife functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes the Plan and/or Company operated under a structural conflict of interest in that it operated in dual roles as the claims administrator and payor of benefits; *to wit*, if it approved Plaintiff's claim it was also liable for payment of benefits. [1]

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to

1\. 6. The Company and Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and Company pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to from the Company as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in his designated occupation on or about July 22, 2009. Plaintiff has remained disabled as that term is defined in the Plan continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Thereafter, due to his serious medical conditions, Plaintiff applied for, received and exhausted the maximum duration of Short Term Disability benefits.

11. Plaintiff thereafter applied for long term disability benefits under the relevant MetLife policy.

12. Upon information and belief, the Plan provides the following definition of a covered disability:

"To be considered Disabled (or have a Disability), you must:

---

administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

- Have a Sickness or Injury;
- Be receiving Appropriate Care and Treatment from a Doctor on a continuing basis for such Sickness or Injury;
- Be unable to perform all the material duties of you Own Occupation or a Qualified Alternative;
- Be unable to earn 80% or more of your Indexed Base Monthly Pay at your Own Occupation for any employer in the Local Economy"

13. In support of his claim for long term disability benefits, Plaintiff submitted medical records to MetLife from his treating physicians which supported he met the relevant definition of disability under the policy.

14. In a letter dated February 19, 2010, MetLife notified Plaintiff his claim for benefits was approved as of January 21, 2010.

15. As part of its ongoing evaluation of Plaintiff's claim, MetLife notified Plaintiff in a letter dated September 10, 2010, that it had denied his claim for long term disability benefits as of September 10, 2010, in part based on a review of Plaintiff's claim by a clinical consultant, Randy Rummler, MD.

16. Upon information and belief, Plaintiff believes Dr. Rummler may have an incentive to protect his own consulting relationship(s) with the disability insurance industry and/or MetLife by providing medical review reports which selectively review and ignore evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance providers and companies such as MetLife and which supported the denial of Plaintiff's claim. Given the complexity of Plaintiff's disabling medical condition(s), Plaintiff believes Dr. Rummler's review of his claim presents a conflict of interest in that it did not have Dr. Rummler personally examine him and is a

reason his claim was denied and he did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

17. MetLife's September 10, 2010 denial letter confirms it failed to provide a full and fair review pursuant to ERISA because it completely failed to reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's evidence. MetLife's determination was also erroneous and unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to work [2] from the time it originally evaluated and approved Plaintiff's long term disability claim; *to wit*, Plaintiff remained unable to engage in any occupation.

18. Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed the September 10, 2010 denial of his claim and submitted additional medical evidence to MetLife which supported his claim that he was unable to work in any occupation.

19. In a letter dated February 10, 2011, MetLife informed Plaintiff it was upholding its prior denial of his claim.

20. In its February 10, 2011 denial letter, MetLife informed Plaintiff he had exhausted his administrative remedies.

21. In its February 10, 2011 denial letter, MetLife denied Plaintiff a full and fair review for several reasons including but not limited to: ignoring the *combined* effects of Plaintiff's serious medical conditions on his ability to work; ignoring or de-emphasizing Plaintiff's self reported limitations; ignoring or de-emphasizing consistent and repeated

---

[2] *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586 (8th Cir. 2002) (holding once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable); *see also*, *Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001); *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); and *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001) (placing burden on insurer to establish claimant's ability to work).

reliable medical reports by Plaintiff's treating physician; retaining a potentially biased medical professional to review Plaintiff's claim and who Plaintiff believes may have an extensive relationship with the disability insurance industry and MetLife; failing to consider evidence submitted by Plaintiff on appeal; and failing to obtain a vocational evaluation.

22. In evaluating Plaintiff's claim on appeal, MetLife had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in [his] best interests and other participants" and it violated ERISA by failing to do so. [3]

23. Plaintiff believes the reason MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to MetLife's dual roles as decision maker and payor of benefits which created an inherent conflict of interest and this conflict is the reason his disability claim was denied.

24. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Dr. Rummler and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted MetLife's decision to deny his claim.

25. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo* because the

---

[3] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1 aforementioned ERISA violations are flagrant and violate any discretion which may have
2 been afforded to the Plan.

3     26.     As a direct result of the MetLife's decision to deny Plaintiff's disability claim
4 he has been injured and suffered damages in the form of lost disability benefits, as well as
5 other potential employee benefits he may have been entitled to receive through or from the
6 Plan, the Company or any other Plan the company may have created such as Retirement and
7 Health Insurance Plans if he were found disabled.

8     27.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
9 prejudgment interest, reasonable attorney's fees, and costs from Defendants.

10    28.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum
11 pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for
12 losses he incurred as a result of Defendants' nonpayment of benefits.

13    WHEREFORE, Plaintiff prays for judgment as follows:

14    A.      For any and all disability benefits due to Plaintiff as a result of being found
15 disabled pursuant to the Plan and/or Policy from the date he was first denied these
16 benefits through the date of judgment and prejudgment interest thereon as well as any
17 other employee benefits, such as including but not limited to retirement and/or health
18 insurance benefits he is entitled to from the Plan, the Company or any other Plan created
19 or maintained by the Company as a result of being found disabled;

20    B.      For an Order that Plaintiff meets the Plan and/or Policy's definition of
21 disability;

22    C.      For an order directing Defendants to pay Plaintiff benefits until such time as
23 he meets the Plan and/or Policy's conditions for termination of benefits;

24    D.      For attorney's fees and costs incurred as a result of prosecuting this suit
25 pursuant to 29 U.S.C. §1132(g); and

26

1  E. For such other and further relief as the Court deems just and proper.

2  DATED this 30th day of May, 2011.

3  SCOTT E. DAVIS. P.C.

4  By: /s/ Scott E. Davis, Esq.
    Scott E. Davis, Esq.
5   Attorney for Plaintiff